IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMANTHA ANN MCMAHON,

    Plaintiff,

    v.

COMMUNITY HEALTH MINISTRY, INC.,

    Defendant.

Case No. 5:19-CV-4070-HLT-TJJ

## MEMORANDUM AND ORDER

Pro se plaintiff Samantha McMahon[1] has sued her former employer, Defendant Community Health Ministry, Inc. ("CHM"), for disability discrimination, retaliatory discharge, and tortious interference with business opportunity. Doc. 1. CHM moves to dismiss the complaint under Rule 12(b)(6). Doc. 7. For the reasons discussed below, the Court denies the motion as to McMahon's claims for disability discrimination (Count I) and retaliation (Count II) because she has pleaded a plausible case of both. But McMahon failed to respond to the motion regarding her tortious-interference claim. Because it appears she has abandoned that claim, and because the complaint fails to assert a plausible claim of tortious interference, the Court grants CHM's motion as to Count III.

## I.    BACKGROUND[2]

McMahon worked at CHM from August 1, 2013, to November 3, 2017. Doc. 1 at 3. At the time of her termination, she was Lead Dental Hygienist and Dental Administrator. *Id.* As part of

---

[1] Because McMahon proceeds pro se, her pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2] The following facts are taken from the well-pleaded allegations of the complaint and, consistent with the standards for evaluating motions to dismiss under Rule 12(b)(6), the Court assumes the truth of these facts for purposes of analyzing CHM's motion to dismiss.

her employment, McMahon and CHM entered into an agreement with the State Student Loan Repayment Program ("SLRP"), which outlined McMahon's duties as a provider to underserved populations and required CHM to meet certain hourly and weekly requirements. *Id.* During the relevant time, Rick Hernandez was CEO of CHM, and Lorena Carlson was CFO. *Id.* at 4-5.

On May 3, 2017, McMahon was in an ATV accident and suffered a traumatic brain injury. She was hospitalized for three weeks. *Id.* at 5. In early June 2017, McMahon was released to work "as she was comfortable." *Id.* Her doctors told her she needed to take things slow and be aware of "any dizziness, headaches, and the possible negative emotional effects of the [traumatic brain injury]." *Id.* McMahon communicated with Hernandez and Carlson "about the process and concerns." *Id.* Carlson has a relative with neurological complications and said she understood the situation. *Id.*

McMahon continued to perform her job duties, which increased due to staffing changes. *Id.* In June 2017, McMahon met with Carlson, Hernandez, and other CHM management to discuss changes to her contract. McMahon was informed that commissions would be cut to make up for "deficits in the organization." *Id.* When McMahon asked what other employees would receive pay decreases as a result of the deficits in the organization, she was told "she was combative and taking it personal." *Id.* The added job duties and decrease in pay were stressful for McMahon. *Id.* at 6. She told Hernandez that the effects of her brain injury limited her emotional control and he said he understood. *Id.* McMahon also attempted multiple times to meet with Hernandez to discuss new administrative staff and dental needs but was told he was done for the day or was too busy. *Id.*

In September 2017, McMahon learned that CHM no longer qualified as an acceptable location for McMahon to continue participating in the SLRP. *Id.* To continue receiving the SLRP grant funds, McMahon would have to find work at a different qualifying clinic. *Id.* Hernandez and

other CHM employees told McMahon that CHM did not want to lose her and that CHM's dental program would not be the same without her. *Id.* In particular, Hernandez encouraged McMahon to turn down other opportunities (and thus stop participating in the SLRP), stating that the CHM dental program may have to close if she left, which would leave many clinics without dental services. *Id.* at 7. McMahon ultimately declined offers to help her find a new placement that would allow her to continue participating in the SLRP. *Id.* at 6-7.

On October 31, 2017, McMahon formally turned down the SLRP grant and asked for a meeting with Hernandez to discuss her future with CHM. *Id.* at 7. McMahon reaffirmed her continued employment with CHM, and although Hernandez asked for a commitment past December 31, 2017, he would "not agree to meet and discuss what such commitment entailed, any change in job description, hours worked, etc[.] due to the change from not having state requirements and to accommodate the needs of Ms. McMahon due to the continued effects of her disability." *Id.*

On November 3, 2017, without any prior notice, CHM terminated McMahon's employment. *Id.* at 8. The termination letter was signed by Hernandez, stated it was effective immediately, and was accompanied by a final check. *Id.* After McMahon applied for unemployment benefits, CHM stated that she was fired "for cause" because of McMahon's pattern of insubordinate behavior, outbursts, argumentative emails and texts, defiant behavior, and refusal of guidance and direct instruction. *Id.* During her employment, McMahon never received any documented warnings, poor reviews, or formal discipline. *Id.* at 4, 8. And although the CHM employee handbook stated that terminations "for cause" would not include a payout of accrued leave, McMahon's final check included such a payout. *Id.* at 9.

**II.  STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 679.

**III.  ANALYSIS**

McMahon's complaint alleges three claims: disability discrimination (Count I), retaliation (Count II), and tortious interference with business opportunity (Count III). Doc. 1 at 9-10. CHM moves to dismiss all claims under Rule 12(b)(6) arguing that McMahon has failed to allege a plausible prima facie case of each claim. Each count is discussed in turn.

**A.  McMahon's complaint states a plausible claim for disability discrimination.**

The Americans with Disabilities Act ("ADA") prohibits discrimination based on disability. *See* 42 U.S.C. § 12112(a) (prohibiting covered employers from discriminating against "a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment"). To establish a prima facie case of ADA disability discrimination, the plaintiff must

show: (1) she either is disabled or perceived as disabled under the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she suffered discrimination because of her disability. *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017). CHM argues that McMahon's complaint fails under the third prong of the prima facie analysis—that she has not pleaded facts that plausibly establish an inference of discrimination. Doc. 8 at 5-7;[3] *see also Ashcroft*, 556 U.S. at 678.

The Court disagrees. The complaint alleges that McMahon reported her traumatic brain injury to CHM management and shared her doctors' concerns and limitations. Doc. 1 at 5. On or shortly after October 31, 2017, she again tried to discuss with Hernandez her job description, her schedule, and how adjustments could be made to accommodate the continuing effects of her injury. *Id.* at 7. But Hernandez would not meet with her. *Id.* CHM then terminated her within a few days, despite never having issued her prior discipline or documented warnings, and under circumstances that allegedly ran contrary to CHM's employee handbook. *Id.* at 8-9. Mindful of McMahon's pro se status, the Court concludes that these allegations are sufficient at this stage of the case to plausibly raise an inference of discrimination associated with McMahon's claimed disability.[4] Accordingly, CHM's motion as to McMahon's discrimination claim (Count I) is denied.

### B. McMahon's complaint states a plausible claim for retaliation.

To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action during or after her protected activity, which a reasonable employee would have found materially adverse; and (3)

---

[3] CHM does not make any arguments regarding the other elements of a prima facie case of disability discrimination.

[4] CHM also argues that the complaint acknowledges its stated reason for McMahon's termination—a pattern of insubordination and argumentative behavior. But this has no bearing on whether McMahon has pleaded a prima facie case of discrimination. As McMahon notes in her response to the motion, the complaint includes allegations that suggest the stated reason was not the real reason for her termination. Accordingly, acknowledging the stated reason for her termination does not negate her claim of discrimination.

there was a causal connection between the protected activity and the adverse action. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).

CHM argues that McMahon has failed to adequately plead protected activity. Doc. 8 at 7-10.[5] CHM acknowledges that a request for an accommodation can constitute protected activity. *Id.* at 8; *see also Lincoln*, 900 F.3d at 1209 ("An employee's request that his employer provide him an accommodation for a disability constitutes a protected activity for purposes of advancing an ADA retaliation claim."). But it argues that McMahon's complaint fails to state a claim for retaliation because it does not "state she specifically informed CHM that she needed any accommodation or what those accommodations may be." Doc. 8 at 9. The Court again disagrees.

As CHM acknowledges, the complaint states that McMahon tried to discuss with Hernandez her continued employment with CHM and whether it was possible for her to change her job description or hours "to accommodate the needs of Ms. McMahon due to the continued effects of her disability." Doc. 1 at 7. McMahon also told both Hernandez and Carlson "about the process and concerns" associated with her injury and recovery, *id.* at 5, and discussed with Hernandez how the effects of her brain injury limited her emotional control, *id.* at 6. The Court acknowledges that these allegations are relatively thin. But at this stage, McMahon need only plead a plausible allegation that she engaged in protected activity, including seeking accommodation, to state a prima facie case of retaliation.[6] Mindful of McMahon's pro se status, the Court concludes that these allegations plausibly allege that she informed management about her limitations and sought changes to her job description and hours to accommodate her traumatic brain injury.

---

[5] CHM does not make any arguments regarding the other elements of a prima facie case of retaliation.

[6] Whether those allegations will prove sufficient at a later stage of the case is not at issue now. The Court acknowledges the cases cited by CHM in arguing that McMahon "does not state she specifically informed CHM that she needed any accommodation or what those accommodations may be." *See* Doc. 8 at 8-9 (discussing cases). But the cases cited were decided in the context of summary judgment, not a Rule 12 motion to dismiss, and for the arguments made here, the procedural distinction is significant.

McMahon's complaint therefore states a prima facie case of retaliation. Accordingly, CHM's motion as to McMahon's retaliation claim (Count II) is denied.

  **C. McMahon has abandoned her tortious-interference claim, and the claim is otherwise insufficient.**

Finally, CHM moves to dismiss McMahon's tortious-interference claim (Count III). Doc. 8 at 10-14. But McMahon does not address this argument in her response, and thus appears to have abandoned the claim. *See, e.g.*, *Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (finding that plaintiffs abandoned claims by failing to "seriously address them" in their appellate brief); *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to a summary-judgment motion).

Even if McMahon had not abandoned the claim, the Court finds that, consistent with CHM's motion, McMahon's complaint fails to state a claim for tortious interference with a prospective business advantage.[7] Under Kansas law, such a claim requires:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct.

*Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1154 (D. Kan. 2006) (quoting *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003)) As to the first element, the complaint alleges only that three clinics "were interested" in McMahon. Doc. 1 at 7. But McMahon does not allege she was offered a position at any other clinic or allege facts demonstrating a probability she could expect an offer, which is in insufficient to maintain a tortious-interference claim. *See Snyder*

---

[7] McMahon's complaint refers to this claim as "Tortious Interference with Business Opportunity." Doc. 1 at 10.

*v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1237 (D. Kan. 2009) (stating that "general conclusory allegations" about potential contracts "are insufficient to show the existence of a business relationship or expectancy with the probability of future economic benefit"). Nor are there any allegations in the complaint that CHM was aware that any clinics "were interested" in McMahon. Thus, McMahon has not alleged the second element—knowledge of the expectancy by CHM.

The fourth element, intentional misconduct, must be "'interference' which either induces or causes a third person not to enter into or continue a business relationship or which prevents plaintiff from acquiring or continuing a business relationship." *Braun v. Promise Reg'l Med. Ctr.-Hutchinson, Inc.*, 2011 WL 6304119, at *8 (D. Kan. Dec. 16, 2011). Here, there are no allegations that any action by CHM prevented any other clinics from hiring McMahon, or that CHM even knew any clinics were interested in her. Nor are there allegations that CHM prevented McMahon from taking a position with another clinic—only that it told her that her leaving could be detrimental to CHM's program. *See id.* (distinguishing an inducement not to go work for a third party from being actually prevented from doing so).

McMahon does not address these arguments raised by CHM. Again, the Court is mindful of McMahon's pro se status and liberally construes her filings. *Hall*, 935 F.2d at 1110. But Court cannot act as advocate and construct arguments for her where she has made no attempt to do so herself. *See id.*[8] Accordingly, CHM's motion to dismiss as to McMahon's tortious-interference claim is granted.

---

[8] McMahon initially failed to respond to the motion to dismiss at all and the Court ordered her to show cause why she failed to timely respond and ordered her to file a response. *See* Doc. 10 at 1. That order specifically stated that failure to respond would result in the Court taking up the motion without the benefit of her response. *Id.* McMahon was able to demonstrate excusable neglect and did file a response. *See* Doc. 14 at 1. But as noted above, the response only addresses her discrimination and retaliation claims, not her tortious-interference claim.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that CHM's Motion to Dismiss (Doc. 7) is GRANTED IN PART and DENIED IN PART. McMahon's claims of discrimination (Count I) and retaliation (Count II) remain at issue. McMahon's claim of tortious interference (Count III) is dismissed.

IT IS SO ORDERED.

Dated: February 7, 2020

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE